UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-cv-22772-UU

WARREN ESANU,

       Plaintiff,

v.

OCEANIA CRUISES, INC.,

       Defendant.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, OCEANIA CRUISES, INC. (hereinafter Defendant or "OCEANIA"), by and through undersigned counsel and in accordance with the applicable Federal Rules of Civil Procedures and Local Rules of this Court including Rule 56 of the Federal Rules of Civil Procedures, hereby moves for summary judgment in its favor and over and against Plaintiff on the basis that there are no genuine issues of material fact and that Defendant is entitled to summary judgment as a matter of law, and in furtherance thereof Defendant states:

### INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff alleges he was a cruise ship passenger aboard OCEANIA's M/Y "Riviera" and sustained injury when he slipped and fell on Deck 14, which was wet from a recent rainstorm. Plaintiff alleges Deck 14 was inherently slippery when wet with rainwater and Defendant was negligent in failing to maintain, inspect, and/or warn of the alleged slippery condition. Nevertheless, the surface of Deck 14 is composed of state of the art anti-slip/slip resistant decking that meets the cruise ship industry standards for outdoor anti-slip/slip resistant decking.

The deck surface is certified by the ship manufacturer as anti-slip/slip resistant when wet with rainwater and specifically designed for the outdoor environmental elements. Plaintiff has not provided any Rule 26 expert report rebutting the record evidence that the subject deck surface is anti-slip/slip resistant when wet with rainwater and meets the cruise ship industry standards for outdoor anti-slip/slip resistant decking. As a matter of law, Defendant is entitled to summary judgment as Plaintiff cannot proffer any evidence to demonstrate a triable issue of fact regarding whether a dangerous condition existed with Deck 14.

## STATEMENT OF UNDISPUTED FACTS

1.      Plaintiff alleges he was a cruise ship passenger aboard OCEANIA's M/Y "Riviera" on or about December 24, 2012, and Plaintiff sustained injury when he slipped and fell on Deck 14. See Complaint, ¶ 7 & 9 [D.E. 1].

2.      The deck area where Plaintiff alleges to have slipped and fallen is not covered by any roof and is completely open to the environmental elements, i.e. rain:

> **Plaintiff's Deposition Testimony**
> Q: If you see in these pictures there is this -- the portion that you say you fell in wasn't covered, meaning there was no roof?
>
> A: Right.
>
> Q: It was exposed. Right?
>
> A: Right.
> *Exhibit A*, Plaintiff's Deposition Testimony, pg 48, ln 25, - pg 49, ln 5.

3.      The deck area that Plaintiff alleges to have slipped and fallen is composed of a blue surface:

> **Plaintiff's Deposition Testimony**
> Q: Your claim when you fell -- you claim that you fell on the blue surface and not on this wood teak surface. Correct.

CASE NO. 13-cv-22772-UU

A: Yes, I did fall on the blue surface.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 41, ln 8-11.

4.      Plaintiff was walking towards the cruise ship's gym and had taken a few steps from a roof covered teak deck surface onto the uncovered blue deck surface, when Plaintiff slipped and fell while walking on the uncovered blue deck surface:

**Plaintiff's Deposition Testimony**
Q: And you find yourself on this teal[k] portion here and you have to then walk from this surface to the blue surface?

A: Right.

Q: And so you are leaving from the area that is covered to the area that's not covered?

A: Exactly.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 54, ln 9 -15.

Q: Which it would be captured –

A: So if you went back to the teak area and you stepped out two or three steps I wouldn't call that exact but you would know pretty much where I fell.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 63, ln 11-14.

5.      Plaintiff testified the blue deck surface was wet with rainwater from a recent storm and Plaintiff was completely aware of the wet nature of the blue deck surface before he stepped onto it:

**Plaintiff's Deposition Testimony**
Q: And that day it was raining. Correct?

A: Yes.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 48 ln 19-20.

Q: Do you know how long it has been raining before you got to that teak area?

A: No. But I don't think it was like torrential.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 137, ln 22-25.

Q: It was water, so you are saying when you put your hand there was water, rain water right?

A: I believe.

Q: Okay. But you don't know if something was mixed with that rainwater from some other customer 5, 10 minutes before you fell?

A: It was clearly water, it not wasn't greasy, it wasn't soda, it was clearly water.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 77, ln 16 – 23.

Q: Were these multiple puddles, like there is a puddle here, a puddle there, a puddle there or was it one puddle?

A: I think that there were some areas of where the water ponded a little bit.

Q: Or was it that the whole thing is generally wet?

A: No, I think it was all wet but there are some areas that was, you know, water ponded.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 105, ln 15-23.

Q: Could you remember if it was raining when you got to the teak area and were observing the scene and saw these puddle?

A: I don't think it was raining but it was very wet.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 138, ln 6-9.

6.     A yellow wet caution sign was erected near the incident scene area and informed

Plaintiff of the wet nature of the deck area; Plaintiff observed this wet caution sign immediately

prior to his alleged slip and fall incident on the blue deck surface:

**Plaintiff's Deposition Testimony**
Q: You remember seeing -- this is -- these are pictures your counsel gave me and I have some other ones here.

A: Right.

Q: You remember seeing this yellow sign that says caution wet floor?

A: Yes, I saw the sign.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 54, ln 9- 22.

Q: May be the same picture, may not be, I don't know. But it is right on the corner where this post is right before the blue area.

A: Right.

Q: And do you know who took these photos?

A: My wife.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 55, ln 10-15.

Q: And if you are walking to the blue surface do you know -- you would have walked right by this sign, correct?

A: I saw a sign that says slippery when wet.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 56, ln 5-8.

Q: Yeah. But either way you have to walk by the teal[k] portion to get to the blue portion?

A: Right.

Q: And then as you are walking they have this yellow sign there?

A: Right?

Q: Correct?

A: Yes.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 57, ln 7-14.

7.     Waves or rough seas did not contribute to Plaintiff's slip and fall incident on the

blue deck surface:

**Plaintiff's Deposition Testimony**
Q: Do you remember the height -- the condition of the seas at the time of your fall, it was choppy, high tide, low tide?

A: I don't think it was -- there was no rough sea.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 151, ln 20-24.

Q: Was the boat rocking when you were walking on that teak portion?

A: Not that I recall.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 151, ln 25,- pg 152, ln 2.

8.      Plaintiff contends that OCEANIA was negligent because the blue deck surface is

inherently slippery when it becomes wet with rainwater:

> **Plaintiff's Deposition Testimony**
> Q: All right. Now your claim, and I have a copy of your complaint as drafted by
> your counsel, is that a deck on the Riviera, specifically deck 14, was coated with a
> surface that becomes unreasonably slippery when wet. Did you ever read that
> complaint?
>
> A: Yes.
>
> Q: And are you familiar with that allegation?
>
> A: Very.
> *Exhibit A*, Plaintiff's Deposition Testimony, pg 38, ln 15-22.
>
> Q: So we are not talking then just in terms of that claim about a spilled liquid, we
> are limiting this to your allegation that when it rains this coating becomes
> unreasonably slippery when wet, as it is raised in the complaint. Correct?
>
> A: Correct.
> *Exhibit A*, Plaintiff's Deposition Testimony, pg 69, ln 12-17.
>
> Q: And you feel that because you fell the cruise line is liable because you have
> concluded that this blue deck was somehow unreasonably slippery when it rains
> and we knew about that or should have known about that. Correct?
>
> A: Yes.
>
> Q: Okay. That's in a nutshell what the law suit is about. Right?
>
> A: Right.
> *Exhibit A*, Plaintiff's Deposition Testimony, pg 77, ln 24, - pg 78, ln 7.

9.      Plaintiff does not know any information, other than pure speculation, regarding

the material composition of the blue deck surface:

> **Plaintiff's Deposition Testimony**
> Q: All right. Now do you -- you don't have any knowledge or evidence as to what
> that deck, and we are going to get into some specifics in a moment, was made up
> of in terms of the material, if it was metal, titanium, plastic, tile? You have no
> knowledge or evidence of that deck itself?

CASE NO. 13-cv-22772-UU

A: I have -- the deck was covered with a substance which I think is a plastic like substance.

Q: Okay. Let me simplify this a bit. There is some pictures your counsel gave me which are colored pictures.

A: That blue substance.

Q: Right. There is a deck, you see here there's a couple of pictures that have -- like here there is a blue walkway surface. Correct?

A: Yeah.

Q: You don't know what that blue is. Right?

A: I think it is plastic.

Q: You think but you don't know what it actually is, what the material is, right?

A: No.

Q: Now underneath the blue, because the blue is a color, you don't know what the deck itself is made up of. Correct?

A: I think that there is a covering on the deck, I think that is the covering.

Q: I understand it's blue, when you look at it its blue, but you don't know what that blue is and you don't know what the deck itself is made up of meaning if it is metal or titanium or iron or steel?

A: The underneath portion?

Q: Right.

A: No I don't.

Q: And the blue itself you don't know if that's paint? You used the word coating in your complaint but you don't really know what specifically it is in terms of if it's paint or an adhesive?

A: It's not paint.

Q: I am just asking you if you know what the coating -- if it is an adhesive for instance if it is paint, you said it wasn't paint. So at least you are confident enough to know it wasn't paint. Correct?

A: As I understand paint to be, as I have seen paint in my life, there is a thickness to this.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 38, ln 15, - pg 40, ln 21.

Q: Do you know where was -- where the ship was manufactured or constructed?

A: No.

Q: Do you know when this blue surface was placed on the ship?

A: No.

Q: Do you -- and you don't know what the blue surface is? You know it is not paint or you think it is not paint but you don't know actually what it is, what chemical it is?

A: Correct.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 43, ln 25,- pg 44, ln 10.

Q: Okay. Now the surface, the blue surface, you don't know what exactly it is made up of or what it is? You know it is not paint but you don't know exactly what it is or what it is made up of. Correct?

A: I don't know exactly but it's a plastic like or polyurethane like substance.

Q: And you don't know when it was placed on that surface or how. Correct?

A: I don't know exactly when.

Q: All right. Do you know -- did you do any study or analysis on how this blue surface is supposed to interact when it rains with water?

A: I believe that it should not be extremely slippery so that if you exercise care in walking you should still be subject to falling.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 66, ln 12, - pg 67, ln 1.

10.    Defendant's corporate representative (Robin Lindsay) with most knowledge about the blue deck surface testified that the blue deck surface is a poured resin that is certified to be anti-slip/slip-resistant decking:

**Defendant's Corporate Representative Testimony**
Q: Could you tell me what you know about it? And understand, I'm not an engineer. I know nothing about floor surfaces. So, explain it in the simplest possible terms, if you could.

A: This deck is a resin deck that was laid or is provided by a company called API, A-P-I. It's an Italian company. They put this flooring on almost every cruise ship that's built in Italy. It was laid when the ship was delivered in 2012. There's never been any modification to it.
*Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 7, ln 12-21.

Q: Are you satisfied that that deck is – is slip resistant?

A: Yes.

Q: What gives you the basis for that feeling of confidence?

A: There's two important things. One is that when the ship is delivered we have a certificate regarding slip resistance from the shipyard. It was warranted by the manufacturer. The other is that this is the sister ship to Marina, and we've had, since the delivery, probably 2 million guests on board, and this is the first time we've ever seen a claim of someone falling on this deck.
*Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 8, ln 15, - pg 9, ln 6.

Q: It's a resin deck. What is resin? What's·a resin?

A: It's poured as a liquid. Then it solidifies and then it's ground and finished.
*Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 9, ln 16-19.

Q: Are there any other decks other than the 14th floor, where this type of floor exists?

A: Yes.

Q: Where are they?

A: I believe the jogging track is made out of a similar material.·We use this material in the galleys.·This material is used to make faux teak.

Q: What's that?

A: That's on all the balconies.· It's this resin that's just made to look like teak.

Q: And why use this type of surface in the galley, for example?

A: Because it's anti-slip.
*Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 10, ln 21, - pg 11, ln 8.

11.    Defendant's corporate representative (Robin Lindsay) with most knowledge about the blue deck surface testified the blue deck surface was installed in the first quarter of 2012:

> **Defendant's Corporate Representative Testimony**
> Q: How new was this floor on the day of Mr. Esanu's accident?
>
> A: You want to know the date it was installed?
>
> Q:Yes. When was it installed?
>
> A:It was -- it was in the first quarter of 2012, this floor was installed.
> *Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 75, ln 2-8.

12.    Defendant's corporate representative (Robin Lindsay) with most knowledge about the blue deck surface testified that the slip resistant/anti-slip properties of the blue deck surface are designed to hold up even when the surface is wet with rainwater:

> **Defendant's Corporate Representative Testimony**
> Q: Okay. Does the slip resistance properties of this deck hold up in rain?
>
> A: I would say yes.
>
> Q:·I mean, I assume this deck, am I right, that it's designed to be outdoors?
>
> A:·Yes.·It's definitely an outdoor deck.
> *Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 19, ln 10 -17.

13.    Defendant's corporate representative (Robin Lindsay) with most knowledge about the blue deck surface testified that he reviewed the  ship  manufacturer's  anti-slip/slip  resistant certificates in preparation of the deposition:

> **Defendant's Corporate Representative Testimony**
> Q:What else did you look at to prepare for this deposition?

CASE NO. 13-cv-22772-UU

> A:The certificates for the non-slip surfaces for both the faux teak and for the blue API Flexigel.
> *Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 101, ln 11-12.

14.     Defendant's corporate representative (Robin Lindsay) with most knowledge about

the blue deck surface testified that OCEANIA did not conduct slip resistant testing on the blue

deck surface because the ship manufacturer issued anti-slip/slip resistant certificates when the

ship was acquired by OCEANIA:

> **Defendant's Corporate Representative Testimony**
> Q:When this ship, the Riviera, was still in its first year of use in 2012 when this accident is alleged to have happened, what I'm getting at is, in the initial year that this cruise ship is in service, do you do any testing of the floors to see the slip resistance?
>
> A:No, we didn't test, because they came with certificates.
>
> Q:Do you have the certificates?
>
> A:Yes.
>
> Q:What do those certificates say?
>
> A:They show the slip resistant measurements for this surface provided by the manufacturer.
> *Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 82, ln 10-22.[1]

15.     Defendant's corporate representative (Robin Lindsay) testified that there have

never been any reported prior slip and fall incidents on the blue deck surface of Deck 14 on the

M/Y Riviera:

> **Defendant's Corporate Representative Testimony**
> Q: So, this is the first – the first reported fall that you know of on this deck?
>
> A:That's correct.

_____

[1] Attached as *Exhibit C*, correspondence from Defendant producing the anti-slip/slip resistant certificates to Plaintiff. Again, Plaintiff has not produced any Rule 26 expert report rebutting the certificates based on Plaintiff's expert inspecting and testing the blue deck surface.

*Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 9, ln 9-11.

Q: And it's your testimony that no one ever fell -- no one has ever reported falling on deck 14?

A: No. I have never seen another report of a fall on deck 14.

Q: You've never seen one?

A: Right.

Q: Is it possible there is one and it just hasn't gotten to you?

A: No.

Q: Why is that not possible?

A: Because all the reports are kept in a database and we can run searches to see which accidents have happened, what deck, where.
*Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 76, ln 1-9.

Q: Forgive me if I asked you this already, but were there other slip and fall accidents reported on the Riviera during this voyage?

A: You asked, but there were none that I know of.

Q: Did you look, though?

A: No, I did not.

Q: So, you don't know one way or the other?

A: As I mentioned before, all of the incident reports come to me, so there were none others sent to me.

Q: But did you look again, I mean, getting ready for this deposition, or are you just reaching back on memory from December of 2012?

A: No. We ran the report to see what incidents had occurred, and there were no others.

Q: You ran a report yesterday?

A: It was run before that.· I saw it yesterday.

Q: I see. So you did look?

A: It was specifically related to this deck.
*Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 99, ln 4, - pg 100, ln 2.

16.     Defendant's corporate representative (Robin Lindsay) also testified that there have never been any reported prior slip and fall incidents on the blue deck surface of Deck 14 on the identical sister ship to the M/Y Riviera:

> **Defendant's Corporate Representative Testimony**
> Q: Is the Marina the sister ship of the Riviera?
>
> A:Yes.
>
> Q: By "sister ship," does that mean it's almost identical in substance?
>
> A:Yes.
>
> Q: Different colors sometimes, but basically the same ship?
>
> A: That's correct.
>
> Q: How about in the Marina? Have there ever been any falls reported on deck 14 of the Marina?
>
> A: No.
> *Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg, 76, ln 12, - pg 77, ln 2.

17.     Defendant's corporate representative (Robin Lindsay) testified there have never been any prior complaints with the blue deck surface on the M/Y Riviera:

> **Defendant's Corporate Representative Testimony**
> Q: The other -- topic 14 says that I wanted the company to talk about all notices, complaints and warnings that it's received concerning the safety of the deck surface and the deck's coating on deck 14. So far I've talked about accidents, but sometimes people can complain or voice concerns other than after an accident. Somebody can say, "Oh, I slipped on the surface." Have you gotten any reports about deck 14?
>
> A: There are none that I know of.

Q: No complaints, no comments?

A: No.
*Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 95, ln 6-19.

18.     Moreover, Defendant's corporate representative (Robin Lindsay) with most

knowledge about the blue deck surface testified that the blue deck surface is state of the art when

it comes to anti-slip/slip-resistant properties and outside environmental conditions:

> **Defendant's Corporate Representative Testimony**
> Q: What's the history of the surface, though, on board ships?· Has it got a good reputation?
>
> A: Yes, it does.
>
> Q: Is it the best surface that someone can get for an upper deck with no roof above it?
>
> A: We consider it's the best we can get.
> *Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 95, ln 25, - pg 96, ln 1.

19.     Defendant's corporate representative (Robin Lindsay) testified that it is standard

policy to erect the yellow wet caution signs when any deck surface on the cruise ship, whether it

is the blue deck surface or any other deck on the cruise ship, becomes wet:

> **Defendant's Corporate Representative Testimony**
> Q: Mr. Esanu testified that when he fell, let me show you Exhibit 5, there were these wet floor, "Caution, Wet Floor," signs.· In fact, you can see it there in photo 2 as well. Who put those there and why? Let's start with, who put them there?
>
> A: I would guess that the deck stewards put ·them there.
>
> Q: Why would they put them there?
>
> A: It's our company standard procedure that when any surface is wet, we put a caution sign.
>
> Q: All right. Regardless -- okay. And was it -- was the surface wet the day Mr. Esanu fell?

A: Yes. From reading the reports, it had rained.
*Exhibit B*, Defendant's Corp. Rep. Deposition Testimony, pg 12, ln 1-15.

20.     Plaintiff has no knowledge of the maintenance or inspection procedures for the

blue deck surface on Deck 14, including when the deck was last inspected, cleaned, dried, etc. by

crew prior to the subject incident:

**Plaintiff's Deposition Testimony**
Q: Correct. Now the other things you have sued us for you said we failed to
properly inspect the floor and we talked about this a little bit earlier. You don't
know when the crew members last walked by the area that you fell prior to you
falling. Correct?

A: Correct.

Q: The last one you had here besides other ways you put defendant failed to
properly maintain the floor. You don't know when the crew last maintained,
whatever the word maintained means to you, prior to your fall. Correct?

A: Correct.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 75, ln 23, - pg 76, ln 9.

Q: All right. But besides that part of my question, you don't know when they last
walked by it prior to you falling?

A: No, I do not know.

Q: And you don't know how they would go about inspecting or cleaning this
surface. Correct?

A: That's correct.

Q: And you don't know what tools they would use if any to clean or inspect the
surface. Correct?

A: Well I saw them around the ship, they use mops and things like that.

Q: Other than that?

A: No.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 45, ln 23 -pg 45, ln 10.

21.    Even if it was pouring rain with rough seas, Plaintiff was determined to walk to

the gym:

> **Plaintiff's Deposition Testimony**
> Q: You would have gone to the gym even if it was pouring rain?
>
> A: Yeah or if it was rough seas.
> *Exhibit A*, Plaintiff's Deposition Testimony, Pg 154, ln 7-9.
>
> Q: There was nothing prohibiting you from going back inside and asking someone, "is there another way I can get to the gym, I don't want to walk on the blue deck because it has got puddles"?
>
> A: I would have had I found somebody and there was no one apparent.
>
> Q: But there was nothing prohibiting you from doing that. Correct?
>
> A: I guess not.
> *Exhibit A*, Plaintiff's Deposition Testimony, pg 154, ln 20, - pg 155, ln 3.

22.    Plaintiff does not know when it stopped raining in relation to when he started to

walk on the blue deck surface:

> **Plaintiff's Deposition Testimony**
> Q: Was it still raining when you left the teak area?
>
> A: That's sort of a blur because I actually believe looking backwards that I went into a state of shock.
>
> Q: Could you remember if it was raining when you got to the teak area and were observing the scene and saw these puddle?
>
> A: I don't think it was raining but it was very wet.
> *Exhibit A*, Plaintiff's Deposition Testimony, pg 138, ln 1-10.
>
> Q: So you don't know at all when it stopped raining in relation to when you started to try to walk on that blue deck?
>
> A: I don't believe it was raining when I was walking over it.
>
> Q: Yeah. That wasn't my question. I am saying you don't know –
>
> A: I don't.

Q: -- when it stopped raining?

A: I don't know.

Q: In terms of time?

A: No.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 153, ln 1-12.

23.     Plaintiff testified that he does not know when it began to rain on the day of the

incident:

Q: Do you know when it began to rain that day?

A: No.
*Exhibit A*, Plaintiff's Deposition Testimony, pg 137, ln 20-21.

## MEMORANDUM OF LAW

It is well-settled that the standard of care owed to passengers by a cruise ship operator is

reasonable care under the circumstances. See *Kermarec v. Compagnie Generale Transatlantique*,

358 U.S. 625, 79 S.Ct 406 (1959).[2] Plaintiff has the burden of proving some conduct of

OCEANIA fell below the standard of care and this caused Plaintiff's accident. See generally

*Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318 (11th Cir. Fla. 1989); *Monteleone v. Bahama*

*Cruise Line*, 838 F.2d 63 (2d Cir. N.Y. 1988); *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169,172

(2nd Cir. 1983). A cruise ship operator is not an insurer of its passengers' safety and it does not

become liable to a passenger simply because an accident occurs. *Everett v. Carnival Cruise*

*Lines, Inc.*, 912 F.2d 1355, 1358 n. 3 (11th Cir. 1990); *Luby v. Carnival Cruise Lines*, *Inc.*, 633

F. Supp. 40, 41 n.l (S.D. Fla. 1986), aff'd, 808 F.2d 60 (11th Cir. 1986). Plaintiff fails to satisfy

its burden of proving OCEANIA's conduct fell below the standard of reasonable care and that a

---

[2] Federal maritime law governs the substantive issues in the case regardless of diversity jurisdiction. *Bird v. Celebrity Cruise Line, Inc.*, 428 F. Supp. 2d 1275 (S.D. Fla. 2005).

breach of care caused Plaintiff's accident. The Eleventh Circuit Court of Appeals has stated the following with regard to the standard of care to which a defendant shipowner must adhere:

> [T]he benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a pre-requisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is commonly encountered on land and not clearly linked to nautical adventure.

*Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. Fla. 1989). The Eleventh Circuit re-iterated the *Keefe* standard of care in *Everett*, in which it described the holding in *Keefe* as a type of limitation on shipowners' liability because *Keefe* requires, as a pre-requisite to the attachment of liability, that the carrier have actual or constructive notice of the risk-creating condition. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355 (11th Cir. Fla. 1990); see also *The Great Northern*, 251 F. 826 (9th Cir. 1918) ("The fact that a passenger, in a bathroom or elsewhere on board a ship, falls, creates no presumption of negligence on the part of the ship.").

Plaintiff cannot establish that a dangerous condition existed with the blue deck surface when wet with rainwater or that Defendant knew or should have known of such a dangerous condition because (1) the blue deck surface was certified by the ship manufacturer as anti-slip/slip resistant when wet with rainwater and designed for the outdoor environmental elements; (2) the blue deck surface is state of the art and meets the cruise ship industry standards for outdoor anti-slip/slip resistant decking; (3) Plaintiff has not produced any evidence or expert report as per Rule 26, despite having his expert inspect the blue deck surface and conduct slip resistant testing, that opines that the blue deck surface fails to comply with the industry standards for anti-slip/slip-resistant decking or that otherwise rebuts Defendant's corporate representative testimony regarding the anti-slip/slip resistant properties of the blue deck surface; and (4)

OCEANIA does not have notice of any prior fall down incidents, accidents, or complaints with the blue deck surface on either the M/Y Riviera or its identical sister ship, the M/Y Marina.[3]

Moreover, not only does the blue deck surface comply with industry standards for anti-slip/slip resistance when wet with rainwater, but Plaintiff was aware of the wet nature of the deck and OCEANIA had warned Plaintiff of the wet deck, as per its standard procedure when any deck area on the cruise ship becomes wet, using a yellow caution sign. *Wish v. MSC Crociere S.A.*, 2008 U.S. Dist. LEXIS 109072, 6-8 (S.D. Fla. 2008) citing *Holland v. United States*, 918 F. Supp. 87, 91 (S.D.N.Y. 1996) (presence of "caution wet floors" sign is evidence that the defendant satisfied duty to warn and protect customers). The standard policy of erecting yellow caution signs for any deck area on the cruise ship, whether inside or outside, that becomes wet does not carry Plaintiff's burden of establishing that the blue deck surface is a dangerous condition when wet with rainwater or that Defendant knew or should have known of such a dangerous condition.

Whereas the record clearly establishes that Defendant exercised reasonable care under the circumstances by installing state of the art outdoor decking that is certified to be anti-slip/slip resistant when wet with rainwater in accordance with industry standards, Plaintiff cannot as a matter of law satisfy its burden of proving that Defendant was negligent.

A cruise ship operator must be on notice of a dangerous or risk-creating condition "for a sufficient interval of time to invite corrective measures," before liability can attach. *Monteleone*

---

[3] Plaintiff's expert inspected and tested Deck 14's blue surface at the alleged incident area on February 4, 2014. Thus, Defendant assumes Plaintiff's expert's inspection and testing of the deck's surface did not yield any findings/opinions that contradicted the testimony of Defendant's corporate representative or else Plaintiff would have provided an expert report with such contradictory/rebuttal findings/opinions.

*v. Bahama Cruise Line*, 838 F.2d 63, 65-66 (2d Cir. N.Y. 1988); see also *Dann v. Compagnie Generate Transatlantique*, 45 F. Supp. 225, 226 (E.D.N.Y. 1942). Equally well-settled is the fact that the burden rests with Plaintiff to prove notice, either actual or constructive, as well as the existence of the same for an interval of time sufficient to allow for corrective action. See generally *Keefe*, 867 F.2d at 1322; *Monteleone*, 838 F.2d at 65-66; *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2nd Cir. 1983). The U.S. District Court for the Northern District of Illinois has stated the following with respect to Plaintiffs burden:

> [I]t is the plaintiffs burden to demonstrate that his injury was caused by the defendant's negligence. In order to meet this burden, the plaintiff must establish directly or by just inference some want of care on the part of the master or the crew of the ship to which his injury may fairly and reasonably be traced. It is not enough for the plaintiff to prove that the negligence might perhaps have caused the injury. If the injury might well have resulted from one of many causes, it is incumbent upon the plaintiff to produce evidence which will exclude the operation of those causes for which the master or crew is under no legal obligation. If the cause of the injury may be as reasonably attributed to an act for which the master and crew are not liable as to one for which they are, the plaintiff has not sustained the burden of fastening tortious conduct upon the master or crew.

*Reneau v. Shoreline Marine Sightseeing Co.*, 1986 WL 1589, *2 (N.D. Ill. 1986) (citation omitted). Here, Plaintiff has not demonstrated via the presentation of deposition testimony, affidavits, expert reports/testimony, or any other evidence that a dangerous condition existed with the blue deck surface or that OCEANIA had actual or constructive notice of any risk-creating condition with the blue deck surface, and thus, Plaintiff fails to demonstrate that OCEANIA failed to exercise reasonable care.

## NO EVIDENCE THAT OCEANIA FAILED TO EXERCISE REASONABLE CARE UNDER THE CIRCUMSTANCES

In *Sorrels v. NCL (Bahamas), Ltd.*, 2013 U.S. Dist. LEXIS 170890 (S.D. Fla. 2013), the Southern District granted summary judgment in favor of the defendant cruise ship operator based

on nearly identical facts concerning a slip and fall incident on an open deck due to rainwater. The plaintiff in *Sorrels* slipped and fell on the cruise ship's pool deck due to a wet deck from rainwater. The plaintiff was aware that the pool deck was wet from rainwater at the time of the incident. The defendant moved for summary judgment on grounds that no substantial evidence demonstrated that the cruise ship acted negligently. *Id* ("Norwegian contends that the record fails to establish a triable issue of fact about whether a dangerous condition existed on the Norwegian Sky's pool deck at the time of Sorrels's accident."). In opposition to defendant's motion for summary judgment, plaintiff proffered expert testimony indicating that the anti-slip/slip resistance of the pool deck fell below industry standards, but the Court struck the expert opinion as unreliable. *Id*. After excluding plaintiff's expert's testimony, the Court found that plaintiff's proffered remaining evidence of "substantially similar" prior slip and falls and the practice of posting warning signs that the decks could be slippery was insufficient to carry plaintiff's burden and summary judgment was granted in favor of the cruise ship operator:

> Given the many factual differences between the prior accidents and Sorrels's, Plaintiffs have not shown that "conditions substantially similar to" Sorrels's fall also "caused the prior accidents." *Heath*, 126 F.3d at 1396 n.12. Even assuming arguendo that the conditions that caused some of the earlier incidents were generally similar to Sorrels's fall, the limited information about those incidents greatly restricts their probative value. By contrast, presenting the generalized accident descriptions to the jury would risk prejudice and confusion "disproportionate to the value of the evidence." *Id*. at 1396 n.13 […] Plaintiffs also rely on the testimony of Solange Winifred, who worked at a restaurant on the Norwegian Sky […]Winifred further testified that the deck department would post signs warning that the decks could be slippery when wet […] In sum, Plaintiffs have produced no substantial evidence that Norwegian created a dangerous condition on its ship and thereby breached its duty of reasonable care. See *Kermarec*, 358 U.S. at 632; *Long*, 2013 U.S. Dist. LEXIS 164035, 2013 WL 6043918, at *4. The Court thus concludes that Norwegian's Motion for Summary Judgment should be granted.

*Sorrels v. NCL (Bahamas), Ltd.*, 2013 U.S. Dist. LEXIS 170890, 28-30 (S.D. Fla. 2013). In the facts currently before the Court, Plaintiff has not provided any Rule 26 expert report opining that the subject blue deck surface fails to comport with Defendant's corporate representative's testimony that it is state of the art outdoor decking that is certified to be anti-slip/slip resistant when wet with rainwater in accordance with industry standards. Plaintiff has no other possible evidence to proffer to carry its burden that OCEANIA was negligent. *Id.* At the time of Plaintiff's slip and fall, Defendant did not have notice of any prior claims, lawsuits, notices, warnings, complaints, or incidents of any slip and falls on Deck 14 of the M/Y Riviera or on Deck 14 of the identical sister ship, the M/Y Marina, which has carried over 2,000,000 passengers since it was first commissioned.[4] Similarly, the fact that OCEANIA has a standard policy of placing a yellow caution warning sign for all deck areas that become wet, regardless of whether it is the blue deck surface or anywhere else on the cruise ship, does not carry Plaintiff's burden of establishing negligence against OCEANIA. *Id.*

Plaintiff cannot provide any evidence that OCEANIA's conduct breached the standard of reasonable care under the circumstances. The burden rests solely with a passenger plaintiff to prove that a defendant cruise ship operator had notice of a dangerous condition. Plaintiff cannot satisfy this burden because there is no evidence that a dangerous condition even existed with Deck 14's blue surface when wet with rainwater, let alone that OCEANIA knew or should have known of such a dangerous condition. Consequently, Plaintiff fails to demonstrate that

---

[4] Plaintiff vaguely testified that he had heard that another passenger had slipped and fallen on Deck 14 at some point during Plaintiff's same voyage; this is inadmissible hearsay and too vague and non-specific to be probative under the holding of *Sorrels v. NCL (Bahamas), Ltd.*, 2013 U.S. Dist. LEXIS 170890, 28-30 (S.D. Fla. 2013).

OCEANIA exercised anything other than ordinary and reasonable care under the circumstances. OCEANIA is entitled to summary judgment as a matter of law.

### NO EVIDENCE THAT OCEANIA BREACHED ITS DUTY TO WARN, INSPECT, OR MAINTAIN

Even assuming there was evidence of prior similar incidents on Deck 14 or there was a Rule 26 expert report from Plaintiff that somehow reliably generated a genuine issue of material fact that the state of the art blue deck surface does not comply with anti-slip/slip resistant industry standards for wet surfaces, Plaintiff still cannot present any evidence to support a claim against OCEANIA for failure to warn, inspect, or maintain the blue deck surface since (1) Plaintiff does not know when it began to rain so as to argue that Defendant had a reasonable amount of time to block-off Deck 14 from access by passengers; (2)Plaintiff does not know how long it had stopped raining prior to the incident so as to argue that Defendant had a reasonable amount of time to remedy-dry the deck area prior to the subject incident; (3) Plaintiff does not know when the blue deck surface was last inspected, cleaned, maintained, dried, etc. by the crew prior to the subject incident; (4) Plaintiff was aware of the wet condition of the deck; and (5) Plaintiff was warned about the wet condition of the deck via the yellow caution sign.

In *Keefe*, a passenger brought suit against a cruise line alleging that a wet spot on the dance floor caused her to slip and fall and that the ship was liable for negligently maintaining the dance floor. The district court made no express finding as to **how long** the unsafe condition had existed prior to the plaintiff's fall, and consequently, the Eleventh Circuit Court of Appeals vacated and remanded, holding that "the absence of a finding concerning notice precludes meaningful review" of the determination that the shipowner negligently maintained the dance floor. *Keefe*, 867 F.2d at 1323. Similarly, in *Rainey*, a passenger filed suit as a result of injuries

allegedly sustained aboard a cruise ship when he tripped over a stool on a dance floor. Because the plaintiff was unable to present evidence to show how the stool had come to be where it was or **how long** it had been there, the Second Circuit Court of Appeals affirmed the district court's finding that the vessel owner/operator was not negligent and the dismissal of the plaintiff's action. *Rainey*, 709 F.2d at 170.

In the matter currently before the Court, Plaintiff cannot demonstrate when the rain began or ended in order to establish that the wet deck existed for an appreciable amount of time so as to place Defendant on notice to block-off and/or dry the subject deck. *Id*; See also *Monteleone*, 838 F.2d at 65; *Lee v. Regal Cruises, Ltd*., 116 F.3d 465 (2nd Cir. 1997). Furthermore, Plaintiff does not know when Deck 14 was last inspected by the crew prior to the incident. Plaintiff simply cannot satisfy its burden of proving that Defendant failed to maintain and inspect the blue deck surface even assuming the blue deck surface did not comply with industry standards for anti-slip/slip resistance or if there was evidence that Defendant was aware of prior similar slip and falls.

Finally, a cruise ship operator is required to warn passengers only of those dangers which it either knew or should have known existed, and which are neither apparent nor obvious. *Luby*, 633 F. Supp. at 41 n.l. The yellow caution wet floor sign that Plaintiff acknowledges observing prior to the incident completely satisfies any duty to warn. See *Wish v. MSC Crociere S.A.*, 2008 U.S. Dist. LEXIS 109072 (D. Fla. 2008) citing *Cf. Holland v. United States*, 918 F. Supp. 87, 91 (S.D.N.Y. 1996) ("presence of "caution wet floors" sign is evidence that the defendant satisfied duty to warn and protect customers").

Therefore, as a matter of law, even assuming there was record evidence of prior similar incidents on Deck 14 or that Plaintiff had provided a Rule 26 expert report creating a genuine

issue of material fact as to the state of the art blue deck surface being anti-slip/slip resistant when wet with rainwater in accordance with industry standards, Plaintiff still cannot present any evidence that OCEANIA failed to warn, inspect, or maintain the blue deck surface at the time of Plaintiff's incident.

Wherefore, Defendant, OCEANIA CRUISES, INC., respectfully requests this Honorable Court enter an Order granting Defendant's Motion for Summary Judgment, dismissing this case with prejudice, entering final judgment in favor of Defendant, and any other relief deemed just and necessary. [5]

Respectfully submitted,


s/ Michael A Garcia
Michael Alexander Garcia
Fla. Bar No. 0161055
Email: mgarcia@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Espirito Santo Plaza, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:    (305) 789-9201

---

[5] Plaintiff also would not be able to satisfy its burden under non-maritime law to withstand summary judgment. See Fla. Stat. § 768.0755.

CASE NO. 13-cv-22772-UU

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2014, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Michael Alexander Garcia
Michael Alexander Garcia

CASE NO. 13-cv-22772-UU

## SERVICE LIST

CASE NO. 13-cv-22772-UU

Peter G. Walsh, Esq.
David W. Singer & Associates, P.A.
1011 South Federal Highway
Hollywood, Florida 33020
E-Mail: pwalsh@1800askfree.com;
lnetti@1800askfree.com
Telephone: (954) 920-1571
Facsimile: (954) 926-5746