UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-22772-Civ-Ungaro/Otazo-Reyes

WARREN ESANU,

    Plaintiff,

vs.

OCEANIA CRUISES, INC.

    Defendant.

_____/

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

## I.
## SUMMARY OF GROUNDS FOR DENYING MOTION

Oceania knew of a dangerous condition—a wet and slippery floor—on the upper deck of its cruise ship, but instead of eliminating the hazard by temporarily roping the area off, Oceania simply posted a yellow *slippery-when-wet* sign, and left its zone of danger wide open. Plaintiff Warren Esanu, age 70, wearing sensible, slip-resistant boat shoes and walking very carefully, took a couple of steps onto the wet deck and slipped and fell, badly injuring his leg. Oceania is negligent under *Collins v. Marriott Int'l, Inc.*, ___ F.3d ___, 2014 WL 1410212, at *4 (11th Cir. April 14, 2014): a property owner has an affirmative duty to eliminate dangerous conditions on its property; posting a

---

[1] Plaintiff's counsel humbly and respectfully asks the Court to consider this response memorandum even though it is filed late. On April 15, 2014, Plaintiff's counsel filed a Motion for Extension of Time to Respond to Motion for Summary Judgment (D.E. 52), but the Court has not yet ruled on that Motion, so Plaintiff's counsel thought he should proceed with filing this response memorandum without further delay. For the reasons given in this memorandum, the Plaintiff contends that there are enough disputed facts in the record to require the Court to deny Oceania's Motion. But if the Court should disagree, the Plaintiff respectfully asks the Court to grant his Motion for Extension of Time and permit him to undertake the additional discovery requested in that Motion for Extension, and then permit him to supplement this response memorandum with any additional relevant evidence that is discovered.

warning sign does not relieve it of liability. Partial summary judgment should be granted in favor of Esanu and against Oceania on the issue of Oceania's negligence.

## II.
## STATEMENT OF MATERIAL FACTS

**1.  Summary-judgment evidence must be viewed in the light most favorable to the non-moving party.**

In examining the parties' statements of material facts, a court must be guided by the following rules: the evidence of the non-moving party should be believed true; all doubts should be resolved against the non-moving party; all evidence should be construed in the light most favorable to the non-moving party; and all reasonable inferences should be drawn in the non-moving party's favor. Steven Baicker-McKee, William M. Janssen, & John B. Corr, *Federal Civil Rules Handbook* 1127 (2014 ed.) (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 n.1 (2009); *Beard v. Banks*, 548 U.S. 521, 530-31 (2006); *Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999); *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456 (1992); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970)).

The material-facts section of Defendant Oceania's Motion for Summary Judgment (D.E. 44) consists of 23 numbered paragraphs. In this response to Oceania's motion, Plaintiff Esanu addresses each of Oceania's numbered fact paragraphs in turn, then adds additional material facts that should be considered by the Court, beginning with paragraph number 24.

**2.  Esanu's Responses to Oceania's Material Facts**

1. Admitted.

2. Admitted that Esanu testified that the place where he fell was not covered by a roof but was open to the elements. But in a recent deposition of one of Oceania's shipboard officers, Stjepan Zuzic, Zuzic testified that Esanu told him that he fell in a slightly different area—an area that was in fact covered by an overhanging roof. The Zuzic deposition was taken on April 7, 2014, but Esanu does not yet have the transcript. This statement that Esanu is alleged to have given to Zuzic, concerning the precise spot where Esanu fell, was never disclosed in discovery. At the April 22, 2014, hearing on Plaintiff's First Motion to Compel (D.E. 32), Magistrate Judge Otazo-Reyes ordered Oceania to give it to Esanu. (The Magistrate Judge also ordered Oceania to provide information about other passenger slip-and-fall accidents that occurred on that voyage.)

3. Admitted.

4. Admitted.

5. Admitted that Esanu testified that he believes the water on the deck was rainwater, but Esanu also testified that he wasn't absolutely certain that the water on the deck was rainwater; he also said that it could have been residue from the crew's mopping the floor, for example. Esanu Dep. 69-71, Jan. 31, 2014 (D.E. 44-1).

6. Admitted.

7. Admitted.

8. Admitted that Esanu alleges that the deck on which he slipped was unreasonably slippery. Esanu also alleges that Oceania should have temporarily roped the area off, rather than simply post a yellow *slippery-when-wet* sign. *Id.* at 58:18; 62:19; 72:1. Esanu also alleges that Oceania should have followed its own internal rules and squeegeed the deck. Had Oceania followed its own internal procedures and squeegeed the deck after the rain stopped, Esanu would not have encountered the degree of water he encountered, and there would have been no "ponding" of water, as Esanu described there was. *Id.* at 105:15—106:5.

9. Admitted that Esanu does not know the precise chemical composition of the deck material that he fell on, but Esanu does testify here that the surface was "a plastic-like substance."

10. Admitted that Oceania's Executive Vice President Robin Lindsay testified that the deck on which Esanu fell is a poured resin, and that the Italian manufacturer of the deck says that the deck is slip resistant, but denied that this testimony may be considered by the Court in a summary judgment motion. This testimony may not be considered in support of a summary-judgment motion because Lindsay does not have the expertise to testify about the slip resistant properties of a chemical substance, and because Lindsay's statements concerning the manufacturer's self-serving claims about its deck's slip resistance are hearsay, and the manufacturer's claims constitute unsupported and unsubstantiated expert opinions by unidentified persons. (What manufacturer wouldn't claim that its product was great?)

11. Admitted.

12. Admitted that Mr. Lindsay testified this way about the deck's alleged slip resistance, but denied that this testimony may be considered by the Court in a summary judgment motion. This testimony may not be considered in support of a summary-judgment motion because (1) Lindsay does not have the expertise to testify about the slip-resistant properties of a chemical substance, and because (2) Lindsay's statements concerning the manufacturer's self-serving claims about its deck's slip resistance are hearsay, and (3) the manufacturer's claims constitute unsupported and unsubstantiated expert opinions by unidentified persons.

13. Admitted that this is how Lindsay testified, but denied that this testimony has any relevance here. See paragraph no. 14, below, concerning the uselessness of these alleged certificates.

14. Admitted that this is how Lindsay testified, but denied that this testimony has any relevance here. Also, this testimony may not be considered in support of a summary-judgment motion because Lindsay's statements concerning the manufacturer's self-serving

4

claims about its deck's slip resistance are hearsay, and the manufacturer's claims constitute unsupported and unsubstantiated expert opinions by unidentified persons.

The footnote accompanying paragraph 14 of Oceania's Motion refers the reader to Exhibit C of the Motion (D.E. 44-3). Exhibit C consists of a March 11, 2014, letter from Oceania's counsel to Esanu's counsel, with which Oceania's counsel enclosed two pages of documents he characterizes as "coefficient friction" tables. Those two pages, which Oceania provided Esanu a week after discovery closed in this case, appear to be part of an undated email from a Vittorio Magnaghi, a sales manager at a company in Italy called "api." What these documents mean is anyone's guess—they are indecipherable.

Finally, the testimony cited in paragraph 14 of Oceania's Motion is misleading to the extent that it suggests that Oceania has never tested this deck for slip-resistance. In fact, during this litigation Oceania hired a safety expert, Brian Edmonds, to inspect the deck, and Edmonds performed that inspection on March 4, 2014. (Esanu's counsel was present on March 4, and saw Dr. Edmonds test the deck.) Oceania has chosen to closet Edmonds's test results, however.

Esanu had his own expert inspect the deck on March 4, but shortly after that inspection, when Plaintiff's counsel learned that Oceania allegedly had an undisclosed statement from Esanu that suggested that the fall happened in a slightly different spot from the spot that Esanu's expert inspected, Esanu's counsel told his expert to cease all work until the accident location was verified.

15. Admitted that Mr. Lindsay testified that he has never heard of anyone falling on deck 14. But what Oceania has omitted here is Esanu's testimony that another passenger, Eric Golder, told Esanu that he had slipped and fallen in the same place where Esanu had fallen, and on the same day. Esanu Dep. 45:11—48:18, Jan. 31, 2014. And Golder also said that others had slipped on deck 14. *Id.* at 68:10-20. (Plaintiff Esanu disclosed this information about Golder in his initial Rule 26 disclosures, and has listed Golder as a trial witness in this case.) Although Golder's information about

other passengers' falls on deck 14 might turn out to be inadmissible hearsay, Golder's testimony about his own fall is of course not hearsay.

16. Admitted that Mr. Lindsay testified this way, but denied that this self-serving testimony about a different Oceania ship is relevant here.

17. Admitted, with the same objections as those listed at number 15, above.

18. Admitted that Mr. Lindsay testified this is the best surface in the universe, but denied that this testimony may be considered by the Court in a summary judgment motion. This testimony may not be considered here because (1) Lindsay does not have the expertise to testify about the slip-resistant properties of this deck, and (2) because Lindsay is here relying upon the manufacturer's self-serving claims about its deck's slip resistance, which are hearsay, and (3) the manufacturer's claims constitute unsupported and unsubstantiated expert opinions by unidentified persons.

19. Admitted, but irrelevant.

20. Denied: Esanu has learned through discovery that Oceania had a policy of requiring crew members to squeegee deck 14 after rainstorms. Lindsay Dep. 14:20—18:17, March 11, 2014 (D.E. 44-2). Lindsay testified that he simply did not know whether the deck was squeegeed after the rain stopped on December 24, before Esanu's accident. *Id.* at 18:7. But given Esanu's testimony about the ponding of water on deck 14, it is a fair and reasonable inference that Oceania's squeegee procedure was not followed that day.

21. Admitted, but what Esanu would have done under different circumstances is irrelevant.

22. Admitted that Esanu does not know exactly when the rain had stopped but that Esanu knew it had stopped before his accident.

23. Admitted.

3. **Additional Material Facts Provided by Esanu:**

24. When he fell, Esanu was wearing boat shoes that were designed for use on wet, slippery surfaces and have a good grip. Esanu Dep. 164:25—165:19; 33:8; 68:1-4; 151:10, Jan. 31, 2014 (D.E. 44-1).

25. After he fell, Esanu rubbed his hand over the deck and noticed that the deck was "not just slippery," but "extraordinarily slippery." *Id.* at 40:13; 67:12-14; 76:19.

26. The deck was made of a plastic-like substance. *Id.* at 39:5, 39:15; 66:16

27. The deck on which Esanu fell was "like a sheet of ice," *id.* at 40:15; 71:18; 76:22, and "should have been closed off." *Id.* at 58:18; 62:19; 72:1.

28. The deck "wasn't just slippery, it was beyond slippery." *Id.* at 58:25.

29. During this voyage, Esanu met another passenger, Eric Golder,[2] who told Esanu that he had slipped and fallen on the same deck that Esanu fell on, earlier the same day; Golder told Esanu the deck was "extraordinarily slippery." *Id.* at 45:14—48:18; 68:14. Esanu's counsel also has spoken to Golder, and Golder is expected to testify that he indeed did slip and fall on this same deck on the same day that Esanu fell, before Esanu fell, and that the deck was extremely slippery, and that he reported the fall to two crewmembers who actually saw him fall and helped him up afterwards.

30. Rather than close off this dangerously slippery deck after Golder's fall, Oceania's crew simply put up a yellow "slippery-when-wet" sign, leaving this zone of danger wide open. *Id.* at 58:22.

31. Esanu assumed that deck 14 was safe to walk across, since Oceania had not roped it off but had merely posted a yellow caution sign. So Esanu took care to walk extremely carefully, but in spite of his caution and his slip-resistant boat shoes, after taking just two or

---

[2] In his initial disclosures under Rule 26, Esanu provided Golder's name and address to Oceania, and advised Oceania that Golder had slipped and fallen on the very same voyage. Golder has not been deposed but is listed as one of the Plaintiff's trial witnesses.

7

three steps, his left foot slid out from under him and he fell. *Id.* at 61:3-7; 63:12; 104:16-18.

## III.
## ESANU'S MEMORANDUM IN OPPOSITION TO OCEANIA'S MOTION FOR SUMMARY JUDGMENT

1. **The Court must deny Oceania's Motion because material facts are in dispute, and because under *Collins v. Marriott Int'l* Oceania is negligent.**

Plaintiff Warren Esanu has testified that the deck on which he slipped and fell was "more than slippery," and was like a "sheet of ice." And he has testified that Oceania knew about this hazard because at least one other passenger, Eric Golder, had slipped and fallen on the very same deck, earlier that same day, in the presence of two crew members. Yet rather than rope off that section of the deck until the surface dried, or rather than squeegee the deck as is Oceania's standard operating procedure, Oceania's crewmembers decided to simply post a yellow, *caution-wet-floor* sign. That is, rather than eliminate the danger by temporarily closing off the area, Oceania left this zone of danger wide open.

Property owners such as Oceania can't insulate themselves from liability simply by posting a warning sign—rather, they have an affirmative duty to eliminate the danger, and when they fail to eliminate it they are guilty of negligence. *Collins v. Marriott Int'l, Inc.*, ___ F.3d ___, 2014 WL 1410212, at *4 (11th Cir. April 14, 2014). That the danger came from a natural condition such as rain makes no difference. *Fieldhouse v. Tam Inv. Co.*, 959 So. 2d 1214, 1215-16 (4th DCA 2007). And Esanu's own knowledge of the hazard does not get Oceania off the hook: "A plaintiff's knowledge of a dangerous condition . . . simply raises the issue of comparative negligence and precludes summary judgment." *Id.* (quoted in *Collins v. Marriott*, 2014 WL 1410212, at *4). Here Oceania was aware of a danger, and acknowledged

its existence by posting a warning sign. Oceania could have easily eliminated the danger altogether by simply roping off this area until the deck dried, but instead it took a half measure. That is negligence, and summary judgment must be denied.

2. **Oceania's Motion must be denied because the scant material on which it is founded cannot be presented in a form that would be admissible in evidence.**

Defendant Oceania's Motion for Summary Judgment (D.E. 44) is a motion for summary judgment in name only. Rule 56 requires the movant to support its arguments with "facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). That rule also says that the testimony that a summary-judgment motion is based upon "must be made on personal knowledge," but Oceania's summary-judgment motion is based almost entirely upon the testimony of Oceania's Executive Vice President, Mr. Robin Lindsay, who has no personal knowledge about anything in this case.

The party moving for summary judgment has the burden of "putting the ball in play" by making a prima facie showing that summary judgment is appropriate. *Evans Cabinet Corp. v. Kitchen Int'l, Inc.*, 593 F.3d 135, 140 (1st Cir. 2010). Mr. Lindsay's cheerleading for Oceania does not even come close to putting the ball in play: a party seeking summary judgment must do more than merely present its own self-serving, non-expert opinions. If it were otherwise, every party would simply file barebones, self serving declarations like Lindsay's in order to smoke out the other side and force it to pre-try its case by submitting affidavits from witnesses and experts in order to avoid summary judgment. Under Rule 56(c)(2), "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." And that is one of Esanu's key objections to

9

Oceania's Motion: the material Oceania has cited to support its Motion—Lindsay's testimony about matters outside his personal knowledge—cannot be presented in a form that would be admissible in evidence, and so the Motion must be denied.

The one defense witness who does have personal knowledge about the deck's slipperiness is Brian Edmonds, Oceania's expert who tested the deck's slip resistance on March 4, 2014. But Oceania has decided to bury Edmonds's report.

### 3. Partial summary judgment should be entered against Oceania on the issue of its negligence.

Under Rule 56(f)(1), a court may grant summary judgment for a nonmovant, after giving notice and a reasonable time to respond. Esanu respectfully asks the Court to follow that procedure and consider granting partial summary judgment in Plaintiff Esanu's favor on the issue of Oceania's negligence, while leaving to the jury the issue of Esanu's comparative negligence, and Esanu's damages. The facts that have been developed in Oceania's Motion for Summary Judgment show that Oceania was aware of a dangerous condition onboard its ship—a wet and slippery deck—yet it did nothing more than post a warning sign. Under the law, that is negligence, plain and simple.

    Respectfully submitted,
    s/Peter G. Walsh
    Peter G. Walsh (Florida Bar No. 970417)
    E-mail: pwalsh@1800askfree.com
    David W. Singer & Assoc., PA
    1011 South Federal Highway
    Hollywood, FL  33020
    Tel: (954) 920-1571
    Fax: (954) 926-5746
    Attorney for Plaintiff Warren Esanu

Certificate of Service

      I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on April 23, 2014, on all counsel of record on the Service List, below.

s/Peter G. Walsh

SERVICE LIST

| | |
|---|---|
| Peter G. Walsh | Michael A. Garcia |
| E-mail: pwalsh@1800askfree.com | E-mail: mgarcia@fowler-white.com |
| David W. Singer & Assoc., PA | Fowler White, PA |
| 1011 South Federal Highway | 1395 Brickell Avenue |
| Hollywood, FL  33020 | Miami, FL  33131 |
| Tel: (954) 920-1571 | Tel: (305) 789-9200 |
| Fax: (954) 926-5746 | Fax: (305) 789-9201 |
| Attorney for Plaintiff Warren Esanu | Attorney for Defendant Oceania Cruises, Inc. |