UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-cv-22772-UU

WARREN ESANU,

    Plaintiff,

v.

OCEANIA CRUISES, INC.,

    Defendant.

### DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, OCEANIA CRUISES, INC. ("OCEANIA" or "Defendant"), by and through undersigned counsel and in accordance with the applicable Federal Rules of Civil Procedure and Local Rules of this Court, hereby succinctly replies to Plaintiff's Response In Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), and OCEANIA states:

Plaintiff's Response further clearly establishes how there is no genuine issue of material fact to withstand Defendant's Motion for Summary Judgment. Nothing in Plaintiff's Response vitiates from the key and determinative undisputed material fact that there is no record evidence that OCEANIA had actual or constructive notice that Deck 14 was inherently slippery when wet with rainwater.

    A.    **Defendant's Corporate Representative Testimony**

Plaintiff argues that the deposition testimony of Defendant's corporate representative (Robin Lindsay) regarding Deck 14 of the M/V Riviera being certified/warrantied by the shipyard and deck manufacturer to be anti-slip/slip resistant when wet with rainwater in

accordance with industry standards is inadmissible hearsay testimony.[1] However, the statements/information provided by the shipyard and deck manufacturer to OCEANIA regarding the anti-slip/slip resistant nature of Deck 14 are not being introduced for the truth of the matter asserted. Conversely, the statements/information are offered to show its effect on OCEANIA and a lack of notice/knowledge by OCEANIA of the alleged hazardous condition: OCEANIA had no reason to believe there was an inherently slippery condition with Deck 14 when wet with rainwater based on the subject statements and accordingly, OCEANIA did not have actual or constructive notice of the alleged hazardous condition so that it should have blocked off the entire area from passenger access when wet with rainwater or have any other maintenance procedures to remove the rainwater from Deck 14 prior to passengers accessing Deck 14.[2]

Since the statements are not being introduced for the truth of the matter asserted, then Mr. Lindsay's testimony regarding the anti-slip/slip resistant nature of Deck 14 when wet with rainwater is admissible non-hearsay testimony. See *McEuin v. Crown Equipment Corp.*, 328 F.3d 1028 (9th Cir 2003) (In a products liability action based on faulty design, outside engineering reports saying this design is safe, relied upon by the defendant in designing the forklift at issue and offered to show the state of mind (justifiable reliance) of the defendant to

---

[1] The shipyard contracted directly with the deck manufacturer, API, for Deck 14's anti-slip/slip resistant surface. See *Exhibit A*, Defendant's Corp. Rep. Deposition, pg 82, ln 10, - pg 83, ln 3.

[2] It is not necessary for a corporate representative designated as a Rule 30(b)(6) witness to have direct, personal knowledge of each and every fact discussed in an affidavit or deposition used in support of summary judgment because a Rule 30(b)(6) representative or designee can be inferred to have knowledge on the behalf of the corporation as the corporation is meant to appear vicariously through them. *Sunbelt Worksite Mktg. v. Metro. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 87387, 4-7 (M.D. Fla. Aug. 8, 2011). Robin Lindsay is not providing an expert opinion, he is testifying regarding information OCEANIA received from the shipyard and deck manufacturer regarding Deck 14's surface.

negate punitive damages, were admissible to show defendant's state of mind (justifiable reliance) but not to show that the design of the product was in fact safe; engineer's statements were not hearsay in the first place because not introduced for their truth); *U.S. v. Cruz*, 805 F.2d 1464, 1477 (11th Cir. 1986) (an out-of-court statement is not hearsay and may be offered to show the effect it has on the hearer); *Katzenmeier v. Blackpowder Products, Inc.*, 628 F.#d 948 (8th Cir. 2010) (Personal injury suit for explosion of rifle manufactured by defendant. Defendant company witness was asked why defendant put proof house emblem on the rifle even though gun was not proofed; witness responded that a Spanish proof house told them to do so; instructions to an individual to do something are not hearsay because they are not declarations of fact and not capable of being true or false, when offered as here to show reasons for action by the instructee, which limited purpose the jury was confined to, here, by instructions).

Words offered to prove the effect on the hearer are admissible when they are offered to show their effect on one whose conduct is at issue. *U.S. v. Nieto*, 60 F.3d 1464, 42 Fed. R. Evid. Serv. 990 (10th Cir. 1995). Evidence which would otherwise be hearsay may be admissible, as bearing on the state of mind of the defendant, if it is not offered for the truth of the statement. This non-hearsay use has been invoked with respect to the issues of knowledge or belief or the absence of knowledge. *U.S. v. Southland Corp.*, 760 F.2d 1366, 17 Fed. R. Evid. Serv. 1083 (2d Cir. 1985); *Walter N. Yoder & Sons, Inc. v. N.L.R.B.*, 754 F.2d 531 (4th Cir. 1985); *U.S. v. Diehl*, 460 F. Supp. 1282, 1 Fed. R. Evid. Serv. 369 (S.D. Tex. 1978), judgment aff'd, 586 F.2d 1080 (5th Cir. 1978); *U.S. v. Norwood*, 798 F.2d 1094, 21 Fed. R. Evid. Serv. 446 (7th Cir. 1986); U.S. v. Conley, 523 F.2d 650 (8th Cir. 1975); *U.S. v. Kutas*, 542 F.2d 527, 1 Fed. R. Evid. Serv. 1199 (9th Cir. 1976); *U.S. v. Lambinus*, 747 F.2d 592, 17 Fed. R. Evid. Serv. 161 (10th Cir.

1984); *Benford v. Richards Medical Co.*, 792 F.2d 1537, 21 Fed. R. Evid. Serv. 193 (11th Cir. 1986).[3]

B. **Prior Slip and Falls**

Plaintiff's Response also asserts there was a **prior** slip and fall by passenger Eric Golder on Deck 14 based on the testimony provided by Plaintiff, which contradicts the testimony of Defendant's corporate representative indicating there were no prior slip and fall incidents on Deck 14. To begin with, Plaintiff never testified that the purported slip and fall by Eric Golder occurred **prior** to Plaintiff's slip and fall incident or that Mr. Golder had **reported** the incident to any crew members. A review of the deposition pages cited in Plaintiff's Response (*Exhibit B*, Plaintiff's Deposition, pg 45, ln 14, –pg 48, ln 18 & pg 68, ln 14) in support of the proposition that Eric Golder's alleged incident occurred **prior** to Plaintiff's slip and fall and was **reported** to Defendant's crew demonstrates there is absolutely no testimony from Plaintiff on these two issues; this is a false a statement of Plaintiff's testimony set forth in Plaintiff's Response.

Regardless, Plaintiff's testimony concerning statements made to Plaintiff by Eric Golder concerning Mr. Golder's purported slip and fall incident is inadmissible hearsay testimony that does not fall within any exception to the hearsay exclusion. See Fed. R. Evid. 801 & 803. There is absolutely no admissible evidence of any prior slip and fall incidents on Deck 14 to establish constructive or actual notice by Defendant of an alleged hazardous slippery condition on Deck

---

[3] Plaintiff fails to cite to any Federal Rule of Evidence or supporting caselaw that such statements/information from the shipyard and decking manufacturer to OCEANIA are inadmissible hearsay or are otherwise inadmissible for any other reason as set forth by Plaintiff. Consequently, these statements donts should be admissible for the truth of the matter asserted.

14.[4] Even assuming Plaintiff's testimony regarding Mr. Golder's hearsay statements were admissible, there is still no evidence that accidents of the sort experienced by Plaintiff "occurred with enough frequency to impute constructive notice" of a dangerous condition on Deck 14. See *Weiner v. Carnival Cruise Lines*, 2012 U.S. Dist. LEXIS 151395, 15-16 (S.D. Fla. Oct. 22, 2012) (granting summary judgment for cruise line based on similar facts).

    C.    **Plaintiff's Incident Location**

Plaintiff also contends that a genuine issue of material facts exists because crew member Zuzic testified that he believed Plaintiff's incident occurred at a different location where a brown color teak-imitation deck surface exists.[5] However, this is a red herring issue because Defendant's Motion for Summary Judgment undisputedly accepts Plaintiff's testimony as to the incident location as true and correct and there is no dispute for purposes of summary judgment that Plaintiff was telling the truth, nothing but the truth, and the whole truth as to where the

---

[4] As per the Magistrate's Court Order [D.E 62], Defendant served a better answer to interrogatory #13 indicating the only other reported slip and fall incident occurring aboard the M/V Riviera during Plaintiff's voyage was on the interior of Deck 15, December 31, 2012, which is approximately six days after Plaintiff's incident, when a 12 year old-minor slipped and fell on marble flooring next to the restaurant entrance. See *Exhibit C*, Defendant's Better Answers to Interrogatory #13. This subsequent slip and fall incident occurring in a completely different location and on a completely different flooring surface is too dissimilar and irrelevant to have any evidentiary value to create a genuine issue of material fact. See Fed R. Evid. 401; *Sorrels v. NCL (Bahamas), Ltd.*, 2013 U.S. Dist. LEXIS 170890, 28-30 (S.D. Fla. 2013); *Mendel v. Royal Caribbean Cruises, Ltd.,* 2012 U.S. Dist. LEXIS 86052 (S.D. Fla. June 21, 2012).

[5] Zuzic's deposition was not filed on the Court record with Plaintiff's Response for consideration by the Court, thus Plaintiff is asserting unsworn and inadmissible hearsay statements from crew member Zuzic that should not be considered by the Court. Fed. R. Evid. 801 & 803; Fed. R. Civ. P. 56(c)(1)(A). Regardless, Robin Lindsay testified the brown color teak-imitation deck surface is the same surface material as the blue deck surface, it has the same anti-slip/slip resistant properties as the blue deck surface, and there were also no prior slip and fall incidents on the brown color teak-imitation deck surface; Defendant is entitled to summary judgment under either scenario. *Exhibit A*, Defendant's Corp. Rep. Deposition, pg 25, ln 4-20; pg 73, ln 15-20; & pg 80, ln 5-10.

incident occurred. Plaintiff's clear, unambiguous, and unquestionable testimony that he fell on the blue deck surface on Deck 14 legally binds and estops Plaintiff from disputing on summary judgment that the accident occurred in a different area than what is clearly and unambiguously indicated in his own deposition testimony. See *Benskin v. Addison Township*, 1988 U.S. Dist. LEXIS 9078, 5-6 (N.D. Ill. Aug. 15, 1988) (The Court rejected party's attempt to impeach its own clear deposition testimony with the testimony of another witness in order to create a genuine issue of material fact to withstand summary judgment).[6]

### D. **Maintenance Procedures**

Plaintiff further asserts that the fact there was "ponded" rainwater on Deck 14 creates a genuine issue of material fact because it establishes that Defendant did not squeegee Deck 14 as per its internal policy. With respect to Defendant's internal policy of squeegeeing Deck 14 **after it has stopped raining**, Plaintiff cannot establish when it stopped raining prior to the subject incident in order to demonstrate that Defendant failed to squeegee Deck 14 within a reasonable amount of time **after** the rain ended:

**Defendant's Corporate Representative Testimony**
Q: What steps does Oceania take to clear the deck of moisture when it gets wet?
A: They typically are squeegeed off as soon as we know the rain has completely stopped.
Q: So, you wait until the rain stops and then you squeegee it?
A: That's a typical operation, yes.
Q: When you say "typical," is that's the way its supposed to happen. That's what you mean; right?
A: Yes.
*Exhibit A*, Defendant's Corp. Rep. Deposition, pg 15, ln 20, - pg 16, ln 5.

**Plaintiff's Deposition Testimony**

---

[6] Plaintiff is a sophisticated New York attorney that unquestionably identified the blue deck surface as the incident area. The fact that Plaintiff is resorting to impeaching his own clear and unambiguous testimony to avoid summary judgment should be tantamount to fraud upon the Court.

Q: So you don't know at all when it stopped raining in relation to when you started to try to walk on that blue deck?
A: I don't believe it was raining when I was walking over it.
Q: Yeah. That wasn't my question. I am saying you don't know –
A: I don't.
Q: -- when it stopped raining?
A: I don't know.
Q: In terms of time?
A: No.
*Exhibit B*, Plaintiff's Deposition, pg 153, ln 1-12.

Plaintiff cannot establish when the rain ended in order to demonstrate that Defendant failed squeegee Deck 14 as per its internal procedures within a reasonable amount of time **after** the rain ended. See *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir. Fla. 1989); *Monteleone v. Bahama Cruise Line*, 838 F.2d 63 (2d Cir. N.Y. 1988); *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169,172 (2nd Cir. 1983).

Additionally, the fact that Defendant has a policy of removing rainwater from Deck 14 **after** it stops raining is not evidence that Defendant knew or should have known of an inherently slippery condition with Deck 14 when wet with rainwater so that Defendant should have blocked off access by passengers to Deck 14 **during** rainstorms and until Deck 14 was squeegeed. Again, Defendant was under the belief that Deck 14 was certified to be anti-slip/slip resistant when wet with rainwater in accordance with industry standards; accordingly, the presence of rainwater alone on Deck 14 does not impute actual or constructive knowledge to Defendant that a slippery condition existed on Deck 14 so that Defendant should have blocked off the area from passenger access or otherwise have undertaken any other maintenance action to remove the rainwater on Deck 14 before passengers could access Deck 14.[7]

---

[7] Plaintiff's Response also attempts to create a genuine issue of material fact that the water on Deck 14 could have been created by mop residue. However, there is no testimony from

E. **Plaintiff Has Not Established OCEANIA Was Responsible for the Alleged Improper Design of Deck 14**

Plaintiff's Response appears to allege that Deck 14 was improperly designed so that it was a "sheet of ice" when wet with rainwater. A cruise line operator is not liable for an alleged improper deck design if the plaintiff does not establish that the ship-owner or operator was responsible for the implementation of the design. See, e.g., *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837, 837 (11th Cir 2012) ("[plaintiff] presented no evidence that [cruise line] actually created, participated in, or approved the alleged negligent design of these areas near the dining room where [he] was injured," and "[u]nder the law in this circuit, [cruise line] can be liable only for negligent design of the dining area if it had actual or constructive notice of such hazardous condition"); see also *Mendel v. Royal Caribbean Cruises, Ltd.*, 2012 U.S. Dist. LEXIS 86052, 2012 WL 2367853, at *2-*3 (S.D. Fla. June 21, 2012) (King, J.) ("A cruise line is not liable for any alleged improper design if the plaintiff does not establish that the ship-owner or operator was responsible for the alleged improper design."); *Rodgers v. Costa Crociere, S.P.A.*, 410 F. App'x 210, 212 (11th Cir. 2010) (affirming summary judgment on negligent design theory "where there was no evidence whatsoever that [cruise line] actually designed the stairs or the hand rails"); *Weiner v. Carnival Cruise Lines*, 2012 U.S. Dist. LEXIS 151395 (S.D. Fla. Oct. 22, 2012) ("In addition, to the extent Dinoff seeks to draw into question the design of the flooring and lighting on the promenade deck, Weiner has presented no evidence that Carnival had any say or participation in such design decisions. Absent such, there can be no liability under a negligent

---

Plaintiff that he observed at any time the crew cleaning Deck 14 with mops and Mr. Lindsay did not testify that any crew member ever cleaned Deck 14 at any time using a mop or that there was a procedure or policy to clean Deck 14 using mops.

design theory."). Plaintiff's Response has not set forth any admissible facts that Defendant was responsible, as opposed to the shipyard, for the design of Deck 14.

### F.  **No Expert Report**

Without prior similar incidents occurring on Deck 14, Plaintiff cannot establish in the absence of an expert report that Deck 14 was in fact inherently slippery when wet with rainwater or that OCEANIA knew or should have known that Deck 14 was inherently slippery when wet with rainwater. *Frasca v. NCL (Bah.) LTD.*, 2014 U.S. Dist. LEXIS 49060, 7-8 (S.D. Fla. Apr. 9, 2014); *Sorrels v. NCL (Bahamas), Ltd.*, 2013 U.S. Dist. LEXIS 170890, 28-30 (S.D. Fla. 2013). Plaintiff has the burden of demonstrating that Deck 14 was in fact inherently dangerous and that OCEANIA knew or should have known that Deck 14 was inherently slippery when wet with rainwater; thus it is Plaintiff's obligation to produce an expert report supporting Plaintiff's claims in order to withstand summary judgment. *Id*. Plaintiff's expert conducted his deck inspection on the incident area-blue deck surface clearly and unambiguously identified by Plaintiff at deposition and Plaintiff failed to produce any expert report for the incident area clearly and unambiguously identified by Plaintiff at deposition.

### G.  **Yellow Caution Sign**

As a matter of law, Defendant is also entitled to summary judgment because "a slick deck caused by water from rain or mist is an open and obvious condition" and considering there was a yellow caution sign further warning Plaintiff of the wet deck as per Defendant's policy when any deck surface becomes wet, Defendant has completely discharged any and all duty to warn owed towards Plaintiff or alternatively did not owe any duty since the wet deck was open and obvious. *Frasca v. NCL (Bah.) LTD.*, 2014 U.S. Dist. LEXIS 49060, 19-22 (S.D. Fla. Apr. 9, 2014) ("In this case, the rainy/misty condition itself serves as an adequate warning that the deck would be

wet and slick because it is obvious to a reasonable person […] Indeed, federal courts routinely dismiss cases or grant summary judgment for defendants in similar cases involving accumulated rainwater which made a surface slippery […] Moreover, Frasca and his companions knew that the deck was wet from rain or mist once they exited the sliding doors […] The undisputed facts establish that Frasca was aware of an open and obvious danger, an outside deck which was wet from rain or mist and which therefore could be slippery. NCL had no duty to warn him of this. It is entitled to summary judgment."); see also *Wish v. MSC Crociere S.A.*, No. 07-60980-CIV, 2008 U.S. Dist. LEXIS 109072, 2008 WL 5137149 (S.D. Fla. Nov. 24, 2008) (granting directed verdict in a slip and fall case where plaintiff was aware that rain could cause a pool deck to become wet and slippery).

## CONCLUSION

It is Plaintiff's burden to establish that a hazardous condition existed on Deck 14 when wet with rainwater and that Defendant had actual or constructive knowledge of the hazardous condition. Plaintiff does not have any expert report or testimony establishing Deck 14 was inherently dangerous, improperly designed, or that Defendant knew or should have known of the same. There is no admissible evidence of any prior slip and falls on Deck 14 or prior complaints by passengers of a slippery condition on Deck 14 when wet with rainwater. Taking the record evidence in the light most favorable to Plaintiff, there is absolutely nothing on the record demonstrating that Defendant knew or should have known of an inherently slippery condition on Deck 14 when wet with rainwater. Defendant is entitled to summary judgment as a matter of law.

Respectfully submitted,

s/ Michael Alexander Garcia
Michael Alexander Garcia
Fla. Bar No. 0161055
Email: mgarcia@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Espirito Santo Plaza, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2014, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Michael Alexander Garcia
Michael Alexander Garcia

CASE NO. 13-cv-22772-UU

- 13 -

## SERVICE LIST

CASE NO. 13-cv-22772-UU

Peter G. Walsh, Esq.
David W. Singer & Associates, P.A.
1011 South Federal Highway
Hollywood, Florida 33020
E-Mail: pwalsh@1800askfree.com;
lnetti@1800askfree.com
Telephone: (954) 920-1571
Facsimile: (954) 926-5746

W:\86820\REPLY861-MSJ-GOM.docx